BARRY, Justice,
dissenting.
This case involves a very unique and isolated situation involving a very narrow question of interpretation of one word in an NCAA Bylaw which may determine the eligibility for a student-athlete’s last year of intercollegiate football competition.
Jon English, á Junior College transfer student to Tulane University, should be declared eligible to participate in intercollegiate football for the 1983 season because he has fulfilled all three requirements listed under the first exception to the general one-year residency rule as published in Bylaw 5-1-(k)-(1) of the NCAA Manual for 1983-84.
Bylaw 5-1-(k)-(1) provides:
(k) The student-athlete’s eligibility for NCAA championships is affected by, and the student-athlete must conform to, the following additional transfer provisions:
(1) A student who transfers from a junior college after transferring from any four-year college shall complete one calendar year of residence at the certifying institution, unless the student:
(i) Has completed a minimum of 24 semester hours or a minimum of 36 quarter hours at the junior college following transfer from the four-year college, and one calendar year has elapsed since the transfer from the first four-year college and, for Division I and Division II member institutions, has graduated from the junior college; or
(ii) Returns to the four-year college from which the student transferred to the junior college, provided the student did not have an unfulfilled residence requirement at the time of the transfer from the four-year college.
*1225 Since Jon did not complete one calendar year of residence at the certifying institution (Tulane) by the beginning of the Fall 1983 term, he. must qualify under one of the above “unless” provisions in order to be determined eligible for his final season. Jon’s status depends upon whether he can meet each of the three elements set forth in the first exception to the one-year residency rule outlined in Bylaw 5-l-(k)-(l) (i) as listed above. Jon English has clearly met each of these requirements to qualify him for participation in intercollegiate football at Tulane University.
An analysis of each of the three elements of this exception and the relevant facts follows:
I.“HAS COMPLETED A MINIMUM OF 24 SEMESTER HOURS AT THE JUNIOR COLLEGE FOLLOWING TRANSFER FROM THE FOUR-YEAR COLLEGE.”
(1) Jon English graduated from Brother Rice High School in Detroit, Michigan as a 2.00 qualifier in June of 1979, as a highly-recruited Parade Magazine All-American Quarterback.
(2) Jon accepted a football scholarship to Michigan State University [the first four-year college] and entered in the Fall Semester of 1979. He attended this first four-year college for two semesters through the Spring of 1980.
(3) Due to an injury and other personal problems Jon encountered, he transferred to Allegheny Community College, a junior college in Pittsburgh, PA [the first junior college ] which he attended for two summer sessions and the Fall term of 1980. This completed his degree requirements, and he graduated from this first junior college. Jon did not participate in football at Allegheny.
(4) Jon enrolled at Iowa State University [the second four-year college] in the Spring Semester of 1981. He completed four semesters at this second four-year college through the Fall Semester of 1982.
(5) Relying upon the rules published in the NCAA Manual and the NCAA Guide for the College-Bound Student-Athlete, Jon transferred to Delgado Community College in New Orleans [the second junior college] in the Spring Semester of 1983, from which he completed 25 semester hours through August of 1983 and has received a degree.
II. “ONE CALENDAR YEAR HAS ELAPSED SINCE THE TRANSFER FROM THE FIRST FOUR-YEAR COLLEGE.”
(1) The first four-year college in this case is Michigan State University which Jon finished attending in the Spring of 1980. Over three (3) years have elapsed since Jon’s transfer from the first four-year college.
(2) The official intent of the NCAA in changing the language of this rule, published in the records of the Proceedings of the 69th Annual NCAA Convention held in January, 1975, was as follows:
“Intent: to prohibit a transfer from a four-year institution from attending and graduating from a junior college and becoming immediately eligible at another four-year institution unless at least one calendar year has elapsed since his transfer from the initial four-year institution." [Emphasis added.] Here the NCAA is defining the phrase “the first four-year college” to mean “the initial four-year institution.” This certainly should represent to those individuals relying upon these rules that the word “first” does in fact mean “first or initial institution.”
(3) It would be grossly unfair and unreasonable to expect Jon English to interpret the word “first” in any other manner than its common usage.
III. “FOR DIVISION I AND DIVISION II MEMBER INSTITUTIONS, HAS GRADUATED FROM THE JUNIOR COLLEGE.”
(1) Jon received a degree from Delgado Community College in May of 1983.
Jon English has fully complied with all three specific elements of the exception to *1226 the general rule, as set forth in Bylaw 5-l-(k)-(l), and, therefore, should not be denied the opportunity to complete his last year of football eligibility at Tulane University this Fall.
ALL of the above was written in July, 1983 by Tulane and submitted to the NCAA Council to support its then belief that English was eligible. How can this Court now say that English “... perceived that the provisions of the booklet [NCAA Guide] might (my emphasis) be interpreted to declare him eligible ... ”? Tulane had no doubt he was eligible.
The majority then leans on what it describes as the “crucial” language in the Guide’s Introduction. The Introduction says the Guide is a general summary of the NCAA rules in easy-to-read form. Most importantly, it warns the rules “may be subject to additional official interpretations when its application to specific situations is not readily apparent. (My emphasis) Even Mr. Hunt, the NCAA official, admitted the rule’s application was readily apparent as it appeared in the Guide.
Hindman Wall, Tulane’s athletic director, testified he told Coach English in April or May that Jon English was not eligible. However, on May 28, 1983, Wall wrote to the NCAA:
In relying upon this published NCAA rule, by the end of this summer, Jon English will have clearly met all three specific criteria to qualify him under the published exceptions to the one calendar year residency requirement in accordance with Bylaw 5-l-(k)-(l) of the 1988-84 NCAA Manual. (Mr. Wall’s emphasis)
It would be unreasonable to expect anyone to interpret this word “first” in any way other than its common usage. I call your attention to Bylaw 5-l-(k)-(l) (ii) where the term “the four-year college from which the student transferred” is used. Certainly, if the NCAA wanted individuals relying upon this rule to think that “first” means the “immediately preceding four-year college”, the NCAA could have used that exact same language.
Mr. Wall’s letter concluded:
In our judgment, Jon English has clearly met all three specific elements needed to comply with the exception to the general rule. The way the exception is drafted is not ambiguous on its face. In fact, it is very clear. It would be grossly unfair to apply anything but a reasonable interpretation of the word “first” under its common usage.
In addition to all of the above commonsense arguments, the equities cry out in Jon’s favor in this case.
The majority dismisses plaintiff’s due process argument because he discussed his eligibility with his father, Coach English, which they claim indicated plaintiff was unsure of his position. I disagree. Jon English testified he was certain he met the exceptions to the one year residency rule. He merely discussed the situation with his father who questioned Ralph Petersen (Tulane’s NCAA liaison); both the Coach and Petersen felt “it was a good possibility he could be eligible”. From Mr. Wall’s letter, we know he had no doubt and understood the clear, unambiguous language just as plaintiff did.
The NCAA virtually controls football in over 900 colleges. Its purpose is to regulate sports programs and maintain the integrity of amateur athletics. Member schools must adhere to rigid rules or suffer severe sanctions. Considering the NCAA’s enormous control (and its laudable purposes), it must also bear some burden to account for its heavy hand options.
Along with the NCAA’s privileges goes the duty to provide clear and accurate information when disseminating its many rules and regulations. Jon English’s interpretation of Bylaw 5-l-(k)-(l) was reasonable because the language is clear. His conclusion was supported by Mr. Wall. “First” still means “first”, not “last”, contrary to what Mr. Hunt would have us believe. What the NCAA intended, and. what it published, were two different *1227 things. “Intent” is immaterial when the expression is unambiguous.
The majority’s opinion is a Monday morning quarterback’s opinion of what should be, but wasn’t; what was intended, but not expressed. The NCAA goofed on the English language (no pun intended). Jon English relied on the NCAA bylaw and changed his position to his detriment. He was supported and encouraged in his belief by his more sophisticated superiors. Surely he has a right to protect his interests based on these extraordinary facts. That right should permit his eligibility under Bylaw 5-MkMi).